WILLIAM L. MORROW, d. b. a. *vs.* The STATE OF DELAWARE, p. b. r.

QUESTION OF LAW RESERVED BY THE SUPERIOR COURT FOR NEW CASTLE COUNTY.

**Constitutional Law. Jurisdiction. Superior Court. Appeal.**—The Act authorizing an appeal to the Superior Court from a conviction by a Justice of the Peace under Chapter 655, Volume 19, Laws of Delaware, was a valid and constitutional exercise of legislative power.

**Same.** On such an appeal there being no provision of law to the contrary, the proceedings in the Superior Court may be of a summary nature and according to such regulations as may be necessary to the execution of the appellate power conferred.

**Constitutional Law. Jurisdiction. Superior Court.**—There is no valid Constitutional reason why a criminal jurisdiction, whether appellate or original, which has heretofore been divested by statute, may not now be restored by statute under the power vested by the Constitution in the Legislature to confer upon the Superior Court either new or renewed jurisdiction.

**Constitutional Law. Jurisdiction. Justice of the Peace.**—The Constitution nowhere specifically defines the jurisdiction of Justices of the Peace, but leaves the granting and regulating of both their criminal and civil jurisdiction to the legislative discretion, subject to such limitations as may be found in that instrument.

On January 22, 1895, William J. Morrow, the defendant below appellant, was convicted before a justice of the peace of a violation of the provisions of Chapter 507, Volume 17, Laws of Delaware. Section 1 of said act makes it unlawful for any person in the State of Delaware " to hunt, kill, take or destroy, sell or expose for sale, after the same has been killed, any partridge, quail or pheasant, except between the first day of November and the first day of January in each year * * * and if any person shall hunt, kill, take or destroy, sell or expose for sale, or have in his or her

possession after the same has been killed, any bird or animal named in this section, contrary to the provisions of this section, such person shall be deemed guilty of a common nuisance, and upon conviction thereof, before any Justice of the Peace, shall be fined five dollars," &c.

Section 11 gives jurisdiction of the offence so created to the Justices of the Peace in the State.

Upon his conviction the defendant was fined five dollars for each rabbit killed and also five dollars for each partridge sold by him, amounting in all to ten dollars for two rabbits and sixty dollars for twelve partridges, or seventy dollars fine and $12.81 for the costs of prosecution. By the fifth section of the act it was provided that any person charged with violation of its provisions should have a right of appeal to the Superior Court of the county wherein the hearing took place. Such appeal to be allowed at any time within fifteen days from the date of the judgment. Under that section an appeal was entered with surety that the same should be prosecuted with effect and also that any judgment which should be rendered against the said William L. Morrow or his executors or administrators on said appeal should be satisfied. The appeal so taken was pending in the Superior Court for New Castle County. On motion of the Attorney- General a rule was granted upon the defendant below appellant to show cause why the appeal should not be stricken from the record and the writ of summons therein quashed and the cause remanded to the justice below from whom the appeal was taken.

At the hearing of the rule on March 9, 1895, the following order was entered:

"Whereupon, said Superior Court, in and for New Castle County, considering that the question, whether it had or had not jurisdiction to hear and determine the said appeal, ought to be decided before all the judges, it is on the application of both parties, ordered and directed by the Court that the said question, whether or not the said Superior Court has jurisdiction to hear

and determine said appeal, be reserved and heard in the Court of Errors and Appeals."

Accordingly at the June term, 1895, the case was heard in the Court of Errors and Appeals before Wolcott, Ch., Lore, C. J., Grubb, Cullen and Marvel, JJ.

*Walter H. Hayes,* special Deputy Attorney General, for the State.

I. *This is a criminal proceeding.*—It is a proceeding instituted in the name of the State of Delaware, in a Court having original criminal jurisdiction, by Nathan H. Hutchins, charging on oath that William L. Morrow, the defendant below appellant, did on the 16th day of January, A. D. 1895, at Wilmington Hundred, sell two rabbits and two dozen partridges, in violation of Chapter 207, Volume 17, Laws of Delaware. This charges a public offence to have been committed in violation of a law forbidding it, and for the doing of such act the law attaches a punishment of fine, and in default of payment thereof, imprisonment in the County Jail; Rev. Code, 1893, p. 457; 4 Encyc. Law 642-3, 730; 1 Bouv. Law Dict. 455-456-112; 4 Bla. Com. 5; 1 Bish. Cr. L. §§ 30-32; *State vs. Stearn,* 11 Foster (N. H.) 106; *Landers vs. Staten Island R. R. Co.,* 54 N. Y. 430-456; *Cattel vs. Ireson,* El. Bl. & El., 91 (96 E. C. L. 90).

II. The Superior Court neither has nor can have any jurisdiction over crimes and misdemeanors, therefore the General Assembly when it enacted Section 5, of Chap. 655, Vol. 19, Laws of Delaware, conferring jurisdiction on the Superior Court of the State, acted without authority and beyond the powers delegated to it by the Constitution.

The appeal to the Superior Court in this case was taken and granted under and by force and virtue of the provisions of Section 5, Chapter 655, Vol. 19, Delaware Laws.

In enacting this section the General Assembly exceeded the powers conferred on it, and therefore it is unconstitutional.

The whole judicial power of this State is vested in the Courts enumerated in the first section of Article 6 of the amended constitution of 1832. For the purpose of this argument, however, we only have to do with three of said Courts, viz: the Superior Court, the Court of Oyer and Terminer and the Court of General Sessions of the Peace and Jail Delivery.

I. The Superior Court.—" This Court shall have jurisdiction of all causes of a civil nature, real personal and mixed, at common law, and all other the jurisdiction and powers vested by the laws of the State in the Supreme Court or Court of Common Pleas. Constitution, Art. 6, § 3.

The case before the Court, being criminal in its nature, is not included in the first clause of the above paragraph, i. e., is not " of a civil nature."

If, therefore, there is any jurisdiction in the Superior Court over the subject matter involved in the case now before it, it must be derived from the jurisdiction and powers vested by the laws of this State, at the time of the adoption of the present Constitution, " in the Supreme Court or Court of Common Pleas." Id.

In examining these two sources of jurisdiction, I will first consider that derived from the Court of Common Pleas.

This Court was created about the year 1737, its jurisdiction was purely civil in its nature, and expressly so declared and defined. 1 Del. Laws, Chap. 54, § 15.

The Constitution of 1792 refers to this Court, but it does not define its jurisdiction, other than by the provision, that all laws of the State in force at the time of adoption of the Constitution, not inconsistent with it, remain in force, unless altered by future laws, etc. Constitution 1792, Art. 6, § 1, Art. 8, § 10.

Its jurisdiction continued to be a purely civil nature up to the

adoption of our present constitution in 1832. Hall's Dig. 102; 7 Laws of Delaware; 8 *id.*

The provisions in Hall's Digest are the same as Section 15, Vol. 1, Delaware Laws, page 128. Hall's Dig. 102.

So that the Superior Court did not inherit or derive any criminal jurisdiction from the Court of Common Pleas.

This leaves only one source from which the Superior Court has, or can derive any criminal jurisdiction. I now contend that the Superior Court has not derived from said Supreme Court jurisdiction which will enable it to hear these appeals.

The Supreme Court was created about the year 1737, its jurisdiction, which was both original and appellate, was also both criminal and civil. The appellate jurisdiction only was both civil and criminal. 1 Del. Laws, Ch. 54, §§ 6, 7, 8, 9, 10, 11, 12, 13, and 14.

This act was repealed and supplied (so far as it established this court) in 1760 by Chapter 167, 1 Del. Laws. 1 Del. Laws, 374-379. In this connection, reference should also be made to 2 Del. Laws, Ch. 227.

The constitution of 1792, while it mentions this Court by name, does not define its jurisdiction, but it does say that its Judges shall be Justices of Oyer and Terminer and General Jail Delivery. Constitution 1792, Arts. 6-7.

As has been seen, in reference to the jurisdiction of the Court of Common Pleas, that said constitution preserves "all existing laws, etc." Art. 8, § 10.

In the year 1793, by 2 Del. Laws, Ch. 19, §§ 4-5-8, the Supreme Court was stripped of the most of its criminal jurisdiction; 2 Del. Laws, 1089. See *id*. 1191.

Again in 1829, all its criminal jurisdiction was taken away and vested in the Court of "Oyer and Terminer and General Jail Delivery" and the Court of General Quarter Sessions of the Peace and General Jail Delivery; 7 Del. Laws, 410. See Hall's Digest, 104-105.

The law continued to exist in this condition up to, and did so

exist at the time of, the adoption of the constitution of 1832, 7 and 8, Del. Laws.

It is submitted, therefore, that at the time of the adoption of the Constitution of 1832, by which the Superior Court was created, there was no criminal jurisdiction or power in either the Court of Common Pleas, or the Supreme Court, except the power in the Judges of the Supreme Court to deliver the jails of all persons committed for "murders, treasons and such other crimes as now are, or hereafter shall be made capital or felonies of death," and this latter power is only exercised by the Judges of said Court sitting as a Court of Oyer and Terminer, and not in the Superior Court; Constitution 1792, Art. 5, § 3; Hall's Digest, 104, 105; Harker's Debates, Convention, 1832, 170, 171.

So that the only jurisdiction and powers in criminal matters that were formerly vested in the Supreme Court, and by the constitution of 1832, transferred to the Superior Court were that "the Judges of the Supreme Court shall, by virtue of their offices, be Justices of the Oyer and Terminer and General Jail Delivery in the several counties, in the exercise of which, they were confined to capital felonies and manslaughter, &c."

By 1 Del. Laws, Chapter 54, §§ 1, 2, 3, 4 and 5 a Court of General Quarter Sessions of the Peace and Jail Delivery was created, and its powers defined about the year 1737; 1 Del. Laws, 121.

It was given jurisdiction over the sale of intoxicating liquors and the regulating inns, taverns and other public house keepers in 1740; 1 Del. Laws, Ch. 75, p. 192.

It was given jurisdiction on the support and maintenance of paupers in certain cases in 1792; 2 Del. Laws, Ch. 249, p. 1036.

It was named a Court of General Quarter Sessions of the Peace and Jail Delivery in 1792; Const. Art. 6, §§ 1-19.

By 2 Del. Laws, Chapter 19c, § 8, its jurisdiction was greatly enlarged in 1793, by curtailing that of the Supreme Court. 2 Del. Laws, 1090.

It was given jurisdiction in appeals of bastardy in 1796; 2 Del. Laws, 1304.

In 1826 and 1829, when the jurisdiction of the Supreme Court was again curtailed by 6 Delaware Laws, Chapter 362, Section 12, this Court's jurisdiction over criminal matters was extended so as to include all crimes and misdemeanors that were not punishable with death; 6 Del. Laws, 740. Reference should also be made to 7 Del. Laws, Ch. 190; and also to 7 Del. Laws, 410.

The jurisdiction of this Court continued the same, and existed with these identical powers at the time of the convention of 1832. 7 and 8 Del. Laws.

At the time of the adoption of our present constitution, therefore, the jurisdiction and powers of these three Courts were divided, separate and distinct, and were vested in said courts as follows, viz:

1. The Court of Common Pleas was vested with original jurisdiction over all manner of "action, suits and causes, civil, real personal and mixed." Hall's Dig. 102.

2. The Court of the General Quarter Sessions of the Peace and Goal Delivery, was vested with original and final jurisdiction over "all crimes and offences not within the jurisdiction of the Court of Oyer and Terminer and General Goal Delivery." The offences cognizable in the latter Court were " every crime punishable with death, and of the crime of manslaughter and of the offences of being an accomplice, or accessory to any such crime." 6 Del. Laws, 740; 7 Del. Laws, 410.

3. The Supreme Court was vested with the following jurisdiction:

" The Supreme Court of this government shall be held and kept twice in every year in each county of this government, which said Court shall be called and styled, the Supreme Court of the government of the counties of New Castle, Kent and Sussex, on

Delaware. (And there shall be four persons of known integrity and ability commissioned by the Governor for the time being, by several distinct patents or commissions, under the Great Seal of this Government, to be Judges of the said Court; one of whom shall be distinguished in his commission by the name of Chief Justice). And each of the said Judges shall have full power and authority, when, and as often as there shall be occasion, to issue forth writs of *habeas corpus, certiorari,* and all remedial writs, or other process necessary for bringing the causes in the said Court to trial, and for carrying the judgments or decrees of said Court into execution."

" SEC. 3. The said Judges, or any two of them shall have full power and authority to hold the said Court, and to examine, correct and punish the contempts, omissions, neglects, favors, corruptions and defaults, of all or any of the Justices of the Peace, Sheriffs, Coroners, Clerks and other officers within this government; and also shall award process for levying all such fines, forfeitures and amerciaments, as shall be taxed, imposed or set, in the said Supreme Court, or estreated there, and generally shall minister justice to all persons, and exercise the jurisdictions and powers hereby granted them concerning all and singular the premises, according to law and equity as fully and amply to all intents and purposes whatsoever, as the Justices of the King's Bench and Common Pleas, at Westminster, or the Chancellor of England may or can do." Hall's Digest 104; Harker's Debates, Convention, 1832, 167, 176.

The Constitution of 1832 respecting the jurisdiction of the Superior Court, created by it, declares, "this Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law, and all other the jurisdiction and powers vested by the laws of this State in the Supreme Court or Court of Common Pleas." Art. 6, § 3.

Respecting the jurisdiction of the Court created by it and called " the Court of General Sessions of the Peace and Jail De-

livery," it declares, "this Court shall have all the jurisdiction and powers vested by the laws of this State in the Court of General Quarter Sessions of the Peace and Jail Delivery."

And respecting the jurisdiction of the Court of Oyer and Terminer, it declares, "this Court shall have the jurisdiction now vested by the laws of this State in the Court of Oyer and Terminer." Art. 6, § 6.

These provisions of our organic-law undoubtedly speak with reference to the law as it stood and existed at the time of the adoption of the constitution, and if there were no other provisions therein, there could be neither room for doubt as to how the legal, as contradistinguished from the equitable power of this State was divided; nor what Courts were provided for to exercise jurisdiction over the separate and distinct kinds or classes of cases. The entire jurisdiction of both the Common Pleas and the Supreme Court, would by said constitution, be vested in the Superior Court.

Exclusive jurisdiction of felonies punished with death, manslaughter, and the crimes of being an accomplice or accessory thereto, would be vested in the Court of Oyer and Terminer, and the jurisdiction over all other crimes would be vested in the Court of General Sessions of the Peace and Jail Delivery.

The constitution of 1832 provides for the establishment of other courts. Art. 6, § 1. And in addition to this provides:

"The General Assembly may by law give to any inferior Courts by them to be established, or to one or more Justices of the Peace, jurisdiction of the criminal matters following; that is to say, assaults and batteries, keeping without license a public house of entertainment, tavern, inn, ale house, ordinary or victualing house, retailing or selling without license, wine, rum, brandy, gin, or whiskey or spirituous or mixed liquors, contrary to law, disturbing camp meetings held for the purpose of religious worship, disturbing other meetings for the purpose of religious worship, nuisances, horse racing, cock fighting and shooting matches, larcenies committed by negroes or mulattoes, and the offence of knowingly

buying, receiving or concealing by negroes or mulattoes, of stolen goods and things the subject of larceny, and of any negro or mulatto being accessory to any larceny. The General Assembly may by law regulate this jurisdiction and provide that the proceedings shall be with or without indictment, by Grand Jury, or trial by Petit Jury, and may grant or deny the privilege of appeal to the Court of·General Sessions of the Peace; the matters within this section shall be, and the same hereby are excepted and excluded from the provisions of the Constitution, that ' No person shall for an indictable öffence be proceeded against criminally by information,' and also from the provisions of the Constitution concerning trial by jury." Constitution, Art. 6, § 15.

This latter section provides for inferior Courts to which jurisdiction may be given by the General Assembly over the offences enumerated therein, and declares that " the General Assembly may by law regulate this jurisdiction and may grant or deny the privilege of appeal to the Court of General Sessions of the Peace and Jail Delivery."

To this point the Constitution is clear, positive and consistent. There is no conflict in its provisions as to our several Courts.

It will be contended that Section 12 of Article 6 of the Constitution is in conflict with the idea of separate Courts, each with its own peculiar kind of jurisdiction.

That section reads as follows:

" SEC. 12. The General Assembly, notwithstanding anything contained in this article, shall have power to repeal or alter any act of the General Assembly, giving jurisdiction to the Courts of Oyer and Terminer and General Jail Delivery, or to the Supreme Court, or the Court of General Quarter Sessions of the Peace and Jail Delivery, or the Court of Common Pleas, or the Orphan's Court, or to the Court of Chancery, in any matter or giving any power to either of said Courts. Until the General Assembly shall otherwise direct, there shall be an appeal to the Court of Errors and Appeals in all cases in which there is an appeal, according to any

act of the General Assembly, to the High Court of Errors and Appeals." Constitution, Art. 6, § 12.

The above section of the Constitution by express terms only grants to the General Assembly " power to repeal or alter any act of the General Assembly giving jurisdiction to the Courts of Oyer and Terminer and General Jail Delivery, or to the Supreme Court, or the Court of Common Pleas, or the Court of General Quarter Sessions of the Peace and Jail Delivery, or the Orphans' Court, or the Court of Chancery in any matter, or giving any power to either of said Courts."

It does not mention either the Superior Court, the Court of Oyer and Terminer, or the Court of General Sessions of the Peace and Jail Delivery, the three new Courts created by the Constitution of 1832.

This section has been construed and passed upon in our State; the Court said " that the Legislature may *establish* other Courts, and give them criminal jurisdiction, either concurrent with our present criminal Courts, or in exclusion of their jurisdiction." " That though the Legislature may repeal any law giving criminal jurisdiction to the Court of General Sessions of the Peace, and thus in effect abolish the cognizance of the offences comprised in such law, they cannot transfer the jurisdiction of such offences to any inferior Courts to be established by them, except the offences enumerated in the 15th section of Article 6; *Gray vs. State*, 2 Harring. 72.

The Court inclined to the opinion in that case, " that in the creation of other Courts, such as are contemplated by the first section of the sixth Article, the Legislature has the power to transfer the criminal jurisdiction, of the Court of General Sessions of the Peace, to such Courts; *Gray vs. State, supra.*

No argument can be drawn from this decision in favor of the power of the General Assembly to vest in the Superior Court criminal jurisdiction. The Court of Appeals in this State declared that " the Superior Court exercises jurisdiction in respect to all matters purely legal, whether of common or statute law, the exercise

of which is not vested in other tribunals." *Knight vs. Ferris,* 6 Houst. 316.

I most respectfully submit that Section 12, of Article 6, does nothing more than grant power to the General Assembly to confer jurisdiction on other courts, to be thereafter created by the Legislature, in pursuance of the power granted in the last two clauses of Article 6, Section 1, of the Constitution. John M. Clayton in Convention 1832; Harker's Debates 158-200; *Gray vs. State,* 2 Harring. 88.

The Superior Court, the Court of Oyer and Terminer and the Court of General Sessions of the Peace and Jail Delivery are all Constitutional Courts, the essential qualities of which are indestructible and unalterable by the Legislature. The Legislature may extend the jurisdiction of any of them, provided such extension be in harmony with the Court's character, and not a usurpation on the inherent powers of any of the other Courts. Work on Courts and Jurisdiction 68-427; *Harris vs. Vandever,* 21 N. J. Eq. 424.

"All laws of this State existing at the time of making this Constitution, and not inconsistent with it, shall remain in force unless they shall be altered by future laws." Constitution, Art. 7, § 9.

This is only a grant of power to change laws generally, and is not to be construed as having any reference to changing the distribution of the judicial power of the State, which has been by a prior article of the Constitution specifically provided for. There can be no implication against the express terms of the instrument. *State vs. Chandler,* 2 Harring. 568, 569; Sutherland, Statutory Construction, § 325, p. 412.

By virtue of the power and authority conferred on it, the General Assembly has, from time to time, enacted laws in relation to the jurisdiction and powers of the Courts of this State. Rev. Code (1893), 697, etc.

Section 1 relates only to civil causes in Superior Court.

Section 2 contains powers which were granted the old Supreme

Court, and they have been regularly transferred to the Superior Court, but they relate solely to matters of a civil nature, for we have seen that jurisdiction of all criminal matters has been vested in either the Court of Oyer and Terminer and General Jail Delivery, or the Court of General Sessions, etc.  Rev. Code (1893) 701, 702.

The words in relation to jurisdiction over crimes, are plain, direct, positive and complete, to wit: " The Court of General Sessions of the Peace and Jail Delivery .within the several counties, shall have jurisdiction of *all crimes and offences* not within the jurisdiction of the Court of Oyer and Terminer."     Rev. Code (1893) 702.

Therefore, the whole jurisdiction of this State over crimes and offences (except " every crime punishable with death, of murder of the second degree, and of the crime of manslaughter, and of the offence of being an accomplice or accessory to any such crime,") is vested in the said Court of General Sessions of the Peace and Jail Delivery, unless the legislature has, by virtue of Sec. 15, Art. 6 of the constitution, vested it elsewhere.

The General Assembly, in the exercise of its authority, on April 9th, 1885, conferred plenary jurisdiction over this case, upon the several Justices of the Peace of this State.  Constitution, Art. 6, § 15; Rev. Code (1893) 460, § 11.

The General Assembly " regulated the jurisdiction, and it did provide that the Justices should have *plenary jurisdiction.*"     It did not then (nor afterwards), grant any privilege of appeal to the Court of General Sessions of the Peace and Jail Delivery; it, on the contrary, denied such privilege of appeal, for it gave the Justices of the Peace plenary jurisdiction.    Rev. Code, 1893, § 11, p. 460; Sutherland, Statutory Construction, §§ 292, 300, 307, 309.

When the General Assembly enacted § 5, Chap. 655, Vol. 19, Laws of Del., which is the statute under which the defendant was convicted, Rev. Code, 1893, § 5, it did not exercise its authority in the manner provided in the Constitution.

The Constitution, Article 6, Sec. 15, expressly delegates to

the General Assembly the power to grant or deny an appeal in such a case as this, to the Court of General Sessions of the Peace and Jail Delivery. Against this express grant, it is submitted that there can be no implied power in the legislature to give an appeal to the Superior Court, as is contended in this case.

This is an appeal, not a *certiorari*, or writ of error. The questions involved are ones of fact. It is a proceeding *de novo* in the Superior Court. How will it be tried on indictment found by Grand Jury? By Petit Jury or Court? How many challenges will the defendant have? Must the jury, if tried by jury, be instructed as to a reasonable doubt? Is the judgment of the Superior Court, if the defendant is found guilty, that he pay a fine, and in default thereof, imprisoned, to be entered among the records of that Court? While the form and mode of entering security before the justice is prescribed, the statute is silent as to any method of procedure on the appeal; Powell, Appellate Proceedings 359, 323; Rev. Code (1893) 462, § 5; Rev. Code (1893) 754, § 24.

It is impossible to believe that, by this one bald crude and imperfect act of the General Assembly, our symmetrical Judicial system which has so long existed, is to be revolutionized; and that civil and criminal cases are to be tried in one and the same Court If the Legislature had the power to grant the appeal in this case to the Superior Court, has it not the power to strip all the Courts of this State of their jurisdiction and their power, so that all cases shall be tried in one of the Courts named in the Constitution?

It certainly was not the intention of the framers of our Constitution to mix and confound civil and criminal cases in the same tribunal, and they never meant to transfer a criminal cause, instituted in a criminal Court, from such Court to one having civil jurisdiction alone. All our history, traditions, decisions and laws are opposed to any such contentions; Harker's Debates of Convention of 1832, p. 21, 43, 44, 111, 115, 116, 130, 131, 144, 167, 176, 194; Sutherland, Statutory Construction §§ 202, 300, 307, 308, 309; *Hall vs. State,* 4 Harring. 132 (139); *Outten vs.*

*Knowles, id.,* 532; *Capelle vs. Duncan,* 3 Houst. 344; *Neary vs·
P. W. & B. R. R. Co.,* 7 Houst. 433, 445, 446.

It is therefore most respectfully submitted that the question
of law reserved by the Superior Court of New Castle County,
must be answered in the negative.

*William T Lynam* and *Willard Hall Porter,* for the defendant
below appellant.

The question presented to the consideration of the Court di-
vides itself into three parts :

*First,* whether the jurisdiction and power to hear and deter-
mine causes of a criminal nature, which was originally vested in
the Supreme Court, now the Superior Court, has ever been ex-
pressly and entirely taken away.

*Secondly,* If the Court should be of the opinion that the
Superior Court had been divested of all criminal jurisdiction, has
not the power been reserved to the Legislature by Section 12 of
Article 6 of our State Constitution, to confer criminal jurisdiction
on said Court.

*Thirdly,* Whether the subject matter embraced in said appeal
is of a criminal nature, or for the recovery of a penalty, and there-
fore civil in its nature.

I. We proceed therefore to the consideration of the question
whether or not the Superior Court as now established, has juris-
diction over causes which are criminal in their nature.

We beg leave to submit that this question scarcely admits of
a legal argument, but resolves itself into simply an historical in-
vestigation, as to the origin of the Courts and a recital of the
various statutes of the State which have separated and named the
various Courts, and have conferred the power upon each.

Our present State Constitution in Section 3, Article 6, pro-vides, among other things, that this Court (Superior) shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law, and all other the jurisdiction and powers vested by the laws of this State in the Supreme Court or Court of Common Pleas.

We must therefore inquire into the jurisdiction and powers vested by the laws of this State in the Supreme Court from its origin, till the transfer of the same to the Superior Court by our present Constitution.

This Court was created between 1726 and 1736 by the name and style of The Supreme Court of the Counties of New Castle, Kent and Sussex on Delaware.

Its jurisdiction was both original and appellate, civil and criminal. Chapter 54a, §§ 6-7, Volume 1, Delaware Laws, pp. 124 and 125, defines its jurisdiction.

While this chapter was repealed and supplied by Chapter 167a, Vol. 1, Delaware Laws, page 374 (1760), as far as the cre-ation, organization, and jurisdiction of the Supreme Court is con-cerned, it is practically and substantially the same.

Chapter 193a, 1 Delaware Laws, page 442 (1769) provides that every indictment, presentment, action, &c., that were depend-ing in the Supreme Court in the county of New Castle, and are now become discontinued, abated, &c., shall be and are hereby revived and continued, &c., and shall and may be heard, tried and deter-mined, before the justices of the said Court, &c. Showing con-clusively that the original criminal jurisdiction remained in said Court.

Practically the same provisions are found in Chapter 5b, 2 Delaware Laws, page 602 (1777); also in Chapter 26b, 2 Dela-ware Laws, 633 (1778), and also in Chapter 30b, 2 Delaware Laws, 643 (1778).

In the Constitution of 1792, Articles 6, 7 and 8, mention is made of said Court, its jurisdiction is declared to be both original and appellate, and that its judges, by virtue of their office, shall

be Justices of Oyer and Terminer and General Jail Delivery in the several counties. It does not define the jurisdiction of the Supreme Court.

By Section 10, Article 8, all the laws of this State existing at the time of making this Constitution, and not inconsistent with it, shall remain in force, unless they should be altered by future laws ; and all actions, and prosecutions now pending, shall proceed as if this Constitution had not been made.

Chapter 19c, 2 Delaware Laws, 1089,. passed June 1793, provided that all actions, suits, indictments, &c., relative to any cause, civil or criminal, which shall be depending before or returnable to the Supreme Court, Court of Common Pleas or Court of General Quarter Sessions, when this act shall commence, shall depend and be returned to the Court to which they severally belong.

In Chapter 61c, 2 Delaware Laws, on page 1192, passed February 7th, 1794, is practically the same enactment.

In Chapter 182, 3 Delaware Laws, on page 392 (1805), is an Act for the better regulation of jails within this State and other purposes. Among other things it is enacted that the Supreme Court of this State, or either of the Judges in vacation, are authorized, empowered, and required to appoint inspectors of the common prison or the jail of each county. It is further provided (sec. 3, *id.*) that if the conduct of the jailer is disapproved of and it is so reported by the inspector to the Supreme Court, the said Court or either of them, or any of the Judges are authorized and required to give notice to the sheriff of said county, and request and demand of him the removal from said prison of the keeper of the same.

In Chapter 70, Volume 5, Delaware Laws, page 120 (1816), the Supreme Court is empowered to transmit, &c., to the State Treasurer lists of all fines imposed by them, within thirty days, &c. In same volume, Chapter 83, page 149, is an act concerning free negroes, free mulattoes, servants and slaves. It is enacted among other things, that if any person, or their agents or factors, shall export or knowingly sell to any person living out of this

State, or sell with intent to export, or carry out for sale from this State, any free negro or mulatto, convicted of felony, during the term of his, her, or their servitude, without a license first had and obtained from the Justices of the Supreme Court or Justices of the Court of General Quarter Sessions of the Peace and Jail Delivery, or any two of them, he, she or they, shall forfeit and pay for every negro, &c., the sum of five hundred dollars.

In Section 17, Chapter 360, 6 Delaware Laws, page 744, it enacts among other things, that whenever by a judgment of Court and for punishment, or by an order of Court and for payment of restitution money or fine and costs, it shall be adjudged that a person convicted of a crime or misdemeanor, shall be disposed of as a servant, &c., and if any person during the period of servitude of such servant, shall export or convey such servant out of this State, or shall transfer or assign such servant to any person residing at the time out of this State, &c., every person so offending shall forfeit and pay to this State the fine of $500, &c., provided that the Supreme Court or Court of Common Pleas shall have power * * * to grant license to the master of such servant, to export him or to transfer him for the purpose of being conveyed out of the State.

In Chapter 144, Volume 7, Delaware Laws, page 282, it is enacted that the Supreme Court or Court of Common Pleas shall have power to grant licenses to the owner of any negro or mulatto slave, to export the same to the State of Maryland, or to bring the same to this State therefrom, &c.

By chapter 190, Volume 7, Delaware Laws, page 410 (February 11, 1829), after defining the jurisdiction of the Court of Oyer and Terminer, it is enacted that the Court of General Quarter Sessions of the Peace and Jail Delivery, shall have jurisdiction over all other crimes and misdemeanors, except offences committed by slaves cognizable before a Justice of the Peace.

The conclusion of this part of our investigation shows that by various and explicit statutes certain criminal jurisdiction by express words and terms, had been given to the Supreme Court, from which

it had not been divested, certainly up to the time of the passage of the Statutes in Chap. 362, Vol. 6, Delaware Laws, and Chap. 190, Vol. 7, *id.*

It will be contended that the words "all other crimes and misdemeanors," etc., divests the Supreme Court of every particle of criminal jurisdiction, and transfers the same to the Court of General Quarter Sessions.

We respectfully submit that this statute in its general character, cannot repeal the express statutes which had conferred criminal jurisdiction on the Supreme Court.

If, then, at the time of the adoption of the present Constitution, in 1831, there existed anywhere in the Supreme Court the right to hear or determine either criminal actions, or actions of a quasi criminal character, our contention must hold good.

Nowhere in our Constitution or Statutes is the right to appeal in criminal cases, taken away by express words.

In the Constitution of 1831, Section 3, Article 6, jurisdiction is given the Superior Court of all causes of a civil nature, real, personal and mixed, at common law, and all other the jurisdiction and powers vested by the laws of this State in the Supreme Court or Court of Common Pleas.

In schedule of Constitution, Section 5 provides that all the courts of justice now existing shall continue with their present jurisdiction. Also all suits, proceedings and matters pending in the Supreme Court shall be transferred to the Superior Court.

The Revised Code, 1893, page 697, Chap. 92, entitled " Of the Superior Court," declares :

"Section 1. The Judges of the Superior Court, or any two of them, shall hold pleas of assize, *scire facias*, replevin, information and actions on penal statutes, and hear and determine all and all manner of pleas, actions, suits and causes, civil, real, personal and mixed, according to the Constitution and laws of this State, as fully and amply to all intents and purposes, as the Justices of the King's

Bench, Common Pleas and Exchequer of England, or any of them may or can do."

In a suit for freedom by a slave for being illegally exported from the State, the Superior Court will determine the fact of exportation as a matter of issue in the case.

This was under a specially delegated jurisdiction to this Court.

See Dig. 1829, page 154. It was not part of its general jurisdiction. *Thoroughgood vs. Anderson,* 5 Harring. 97.

It is *Held* (a). *Certiorari* lies on an order of filiation made by a Justice of the Peace in a case of bastards; (b) the order of filiation is a judgment; (c) the Justice's Court is a court of record; (d) the Court of a Justice of the Peace is a court of superior jurisdiction; *Cloud vs. State of Delaware,* 2 Harring. 361.

Where it was contended that the jurisdiction of Justices of the Peace was specially delegated, and there could be no appeal from their judgment unless it was expressly given by statute, *held* that by the Constitution of 1792, the words " trial by jury shall be as hitherto" gave the appeal and placed the case in the Superior Court as an original case, and that it was very proper that the right of appeal should be preserved since the enlargement of the Justice's jurisdiction; *Waples, p. b. a. vs. Gum, d. b. r.,* 5 Harr. 404 (Ct. E. & A. 1853).

An appeal lies from the Municipal Court on a judgment for violation of city ordinance; *Forbes, d. b. a. vs. Mayor &c. of Wilmington, p. b. r.* 1 Marvel 186.

See Charter, Laws and Ordinances of the City of Wilmington as amended 1893, Sec. 7, Chap. 8, p. 388 ; Sec. 17 id. 395 ; Sec. 15, p. 38 and 39 ; Sec. 20, p. 41 ; and Sec. 28, p. 42 ; *James Alfronzo vs. Mayor &c. of Wilmington,* Continuance Docket Z, 165, No. 128, Feb. Term 1888. On trial list of Superior Court for many terms, and last on list for May Term 1893.

Jurisdiction when once created can only be taken away by

express words, or what is equivalent; *Cates vs. Knight,* 3 T. R. 442; *Shipman vs. Henbest,* 4 T. R. 109; *Hartley vs. Hook,* 1 Cowper 523; *Rex vs. Mayor of London,* 9 B. & C. (27); *Albon vs. Pyke,* 4 Man. & Gr. 424; *Brown vs. Renouard,* 12 East 12; *Crisp vs. Bunberry,* 8 Bing. 394; *In re-opening 28th St.,* 102 Pa. St. 140; *Overseers of the Poor vs. Smith,* 2 S. & R. (Pa.), 363; *Gittings vs. Crawford,* Taney's Dec. 1;

When jurisdiction is once granted, it will not be deemed taken away by a similar jurisdiction being given to another tribunal; *Commonwealth vs. Hudson,* 11 Gray 64; *Berkwitz vs. Lester,* 121 Ill. 99; *Fidelity Trust Co. vs. Gill Car Co.,* 25 Fed. Rep. 737; *Hurth vs. Bower,* 30 Hun 151; Sutherland on Stat. Construction 505;

Jurisdiction when once created cannot be taken away by implication, except when the implication is necessary from the Statute; Sutherland on Statutory Construction, 504; Potter's Dwarris, 113 and 154; 23 A. & E. Enc. of Law, 482; *Chegaray vs. Jenkins,* 3 Sandf. (N. Y.) 409; *Cool vs. Smith,* 1 Black (U. S.) 459; *Wood vs U. S.,* 16 Pet. 342; *Hartford vs. U. S.,* 8 Cra. 109; *U. S. vs. Claflin,* 97 U. S. 546; *Brown vs. County Comms.,* 21 Pa. St. 37; *Street vs. Comms.,* 6 W. & S. (Pa.) 209; *Bowen vs. Lease,* 5 Hill 221; *Williams vs. Potter,* 2 Barb. 216; *Keiter vs. State,* 4 Greene (Iowa) 291; *Foster's case,* 11 Rep. 63.

Repeal by implication of penal statutes are no more favored than of other statutes. *People vs. Gustin,* 57 Mich. 10; *State vs. Alexander,* 14 Rich. (S. C.) 247.

II. If the Supreme Court had been divested of jurisdiction in criminal matters at the time of the adoption of our present Constitution, the power was reserved to the Legislature by Sec. 12, Art. 6, of our Constitution, to confer jurisdiction on the Superior Court.

Article 6, Section 12. "The General Assembly, notwithstanding anything contained in this article, shall have power to

*repeal* or *alter any* Act of the General Assembly giving jurisdiction to the Courts of Oyer and Terminer and General Jail Delivery, or to the Supreme Court, or the Court of Common Pleas, or the Court of General Quarter Sessions of the Peace and Jail Delivery, or the Orphans' Court, or the Court of Chancery, *in any matter*, or *giving any power* to either of said Courts."

The Legislature may take away the criminal jurisdiction of the Court of General Sessions and transfer it to other Courts. *Gray vs. State of Delaware*, 2 Harring. 76 (Sup. Ct. 1836).

The Legislature has the power to take away any of the criminal jurisdiction conferred by Act of Assembly on the Court of General Sessions of the Peace. *id.* 88.

See also case of the *State vs. John Lynch*, there quoted on page 88.

The opinion of HARRINGTON, Justice, on page 90 says:

" * * * the Legislature has the power to take away from this Court (General Sessions) not only its jurisdiction over assaults and batteries, but to deprive it of any or all the subjects now embraced within its jurisdiction, * * * "

III. The subject matter embraced in this appeal is for the recovery of a penalty, and therefore *quasi* civil in its nature.

As GIBSON, J., says, *Shafer vs. McNamee*, 13 S. & R. (Pa.) 44: " It is evident, therefore, that it is not the form of action, but the nature of the subject matter of it, which must decide the question of jurisdiction. Actions of debt often arise *ex malificio* and where there is not a semblance of contract; as in all cases of penalties imposed by statutes, for then the debt is created by law and not by the agreement of the parties.

In *Nichols vs. Squire*, 5 Pick. 169, *per curiam*, all penal actions partake of the nature of a criminal prosecution for an offence.

A penal action is an action for the recovery of a penalty imposed by a statute.    3 Steph. Com. 535 ; Bouvier's Law Dict.

Distinguished from a popular or qui tam action, in which the action is brought by the informer, to whom the part of the penality goes ; a penal action is brought by an officer, the penalty goes to the King.    1 Chitty, Gen. Pr. 25 note ; 2 Archibald, Prac. 188.

A fine is a pecuniary penalty and is commonly (perhaps always) to be collected by suit in some form.    WOODWARD, J., in *Gooselink vs. Campbell*, 4 Ia. 300.

This suit is in fact an action for the recovery of the penalty, and Chap. 655, Vol. 19, Laws of Delaware, does not transfer or attempt to transfer any criminal jurisdiction to the Superior Court. It gives the jurisdiction to the only Court which could hear or determine it.

By the judgment before the Justice of the Peace in the case at bar, the appellant is indebted to the State of Delaware in a determinate sum, not originating from any express or implied promise, but from the express provisions of a statute.    *Chaffee vs. U. S.* 18 Wall. 516 ; *Shaffer vs. McNamee* 13 S. & R. (Pa.) 44.

A careful scrutiny of the statutes giving the appeal and the statutes amended by it, will it is believed bear out this view.    It is at least only of a *quasi* criminal character.    *Wiggins vs. Chicago*, 68 Ill. 375 ; *State vs. Lee*, 29 Minn. 452.

According to late English cases, a matter is not necessarily criminal merely because an indictment will lie, or civil, merely because the proceeding is at the suit of a private person.    *Bancroft vs. Mitchell*, L. R. 2 Q. B. 549.

In *Reg. vs. Paget*, 3 Fost. & F. 29, it was held that an indictment for the obstruction of the highway intended to effect the removal of a nuisance, is in substance a civil, and not a criminal case.

That an action is in the name of the State, and its object is the recovery of a penalty does not make it criminal.    *State vs. Hayden*, 32 Wis. 663 ; *United States vs. Brown*, Deady 566 ; 1 Bish. Crim. Law, § 34, n 5.

The offence mentioned in the statute, which gives the appeal for which we are contending, is civil in its essence. A criminal proceeding may be in substance and effect civil, and be governed in a degree by rules of civil suits. 1 Bish. Cr. L. § 1075 and authorities there cited.

Appeals are contemplated by our law and in certain actions of a *quasi* criminal nature, the Superior Court has jurisdiction. See powers of the Superior Court to fine and imprison. Rev. Code, 1893, Ch. 97, § 33 (737) *id.* §34.

Actions for penalties are civil suits; *Atcheson vs. Everitt,* Cowper 382; *Middleton vs. Wynne, id.* 387; *Mayor, etc. vs. McCaffrey,* 2 Ashmead, 164; *Wilbur vs. Crane,* 13 Pick. 284, 289 (1832); *Williams vs. Campbell,* 3 Metc. 211 (1841); *Baily vs. Chesley,* 10 Cush. 284 (1852); *Roberge vs. Burham,* 124 Mass. 277 (1878); *Town of Partridge vs. Snyder,* 78 Ill. 519 (1875); *Eubanks vs. Town of Ashley,* 36 Ill. 177 (1894); *Stearns vs. U. S.,* 2 Paine (Cir. Ct.) 301, 311; *Chaffee vs. U. S.,* 18 Wall. 516 (1873).

The case must be clear, and the question necessary, before the Court should assume the function of declaring an act of the Legislature unconstitutional; Cooley, Const. Lim. 184-187; *Harlan & H. vs. Paschall,* 5 Del. Ch. 452; *Bailey vs. P. W. & B. R. R.,* 4 Harring. 403-4.

If doubt exists as to the constitutionality of the statute, the benefit of the doubt is to be given to the law; *In re Clinton St.,* 2 Brewst. (Pa.) 599; *Commonwealth vs. Butler,* 99 Pa. St. 535; *Adams vs. Howe,* 14 Mass. 345; *State vs. Intox. Liquors,* 80 Me. 57 . *Eyre vs. Jacob,* 14 Gratt. (Va.) 422.

Statutes giving or extending the right of appeal are always liberally construed in furtherance of justice, and the Courts will endeavor to avoid putting upon them such a construction as would work a forfeiture of the right in the particular case; *Pearson vs. Lovejoy,* 53 Barb. 407; *Kouk vs. Berthold,* 73 Ind. 21; *Womelsdorf vs. Hiefer,* 104 Pa. St. 1; *Vigo's Case,* 21 Wall. 648.

It is therefore respectfully submitted that the question of law

reserved by the Superior Court in and for New Castle County should be answered in the affirmative.

*January Term*, 1897.

GRUBB, J., delivered the opinion of the Court.

This case is before us for the decision of a question of law reserved by the Superior Court in the matter of the appeal of William L. Morrow from the judgment of the Justice of the Peace against him, upon his conviction for a violation of the provisions of Chapter 507, Volume 17, Laws of Delaware. Section 1, together with Section 11 of said Chapter 507, creates an offence of a criminal nature, specifies the penalty for its commission and prescribes the mode of trial by a Justice of the Peace, without either indictment or jury trial, in accordance with the provisions of Section 15, of Article 6 of the Constitution of this State, authorizing the Legislature to give to one or more Justices of the Peace such summary jurisdiction of nuisances and the other minor criminal matters therein enumerated.

Pursuant to the provisions of said Chapter 507, the said William L. Morrow was tried and adjudged guilty of selling two rabbits and one dozen partridges in violation thereof, and sentenced by the Justice of the Peace to pay a fine of five dollars for each of said rabbits and partridges, besides the costs of his prosecution. Thereupon the said defendant, upon giving the required security, took an appeal to the said Superior Court, in accordance with the provisions of Section 5 of Chapter 655, Volume 19, Laws of Delaware.

Afterwards the counsel for the State, at the hearing in said Superior Court, of a rule to show cause why said appeal should not be stricken from the record and the cause remanded to the Justice, etc., contended that the said Court had not jurisdiction to hear and determine said appeal, as it was a criminal action, and that therefore said rule should be made absolute.

Whereupon the Superior Court directed that the question whether or not said Court has jurisdiction to hear and determine .said appeal, be reserved and heard here in the Court of Errors and Appeals.

Our determination of this question of law will be confined to the requirements of the case presented by the record.

Said Chapter 507, Volume 17, has prescribed and authorized what is virtually a summary proceeding before a Justice of the Peace for the enforcement of a forfeiture for the violation of the provisions of a statute for the protection of game in this State, and which unlawful act the General Assembly has therein declared to be a common nuisance, with the view of bringing it within the class of minor criminal matters which are enumerated in said Section 15, Article 6 of the Constitution, and excepted and excluded from the constitutional requirement of procedure by indictment and trial by jury.  Chapter 655, Volume 19, has given to the party charged with such violation of the game law, a right of appeal to the Superior Court from the judgment rendered by the Justice for the recovery of the prescribed forfeiture, and the Superior Court is authorized by said chapter to render upon such appeal a judgment for the recovery of said forfeiture, against the said party or his executors or administrators.  As the act has not provided to the contrary, the proceeding in the Superior Court, upon the appeal, may be of a summary nature and according to such regulations as may be appropriate and necessary to the execution of the appellate power conferred upon said Court by the General Assembly. .

It has not been contended by counsel on either side, that the summary jurisdiction provided by Chapter 507, Volume 17, has not been constitutionally conferred by the General Assembly and lawfully exercised by the Justice who rendered the judgment in this case.

The sole objection, or contention, is that the General Assembly had not constitutional power to confer, nor the Superior Court to exercise, the appellate jurisdiction given by Chapter 655, Volume 19.

The present is not a case of an appeal from the Court of Gen-

eral Sessions of the Peace and Jail Delivery, and therefore within the inhibition of Section 10 of the Schedule of the Constitution. This is simply an appeal from the judgment of a Justice of the Peace rendered in a summary proceeding for the recovery of a forfeiture for the violation of a game law enacted by the Legislature of this State.

There is no constitutional provision expressly prohibiting such an appeal; nor, indeed, expressly prohibiting an appeal from Justices of the Peace in any case—civil or criminal—lawfully within their jurisdiction. Nor do we find that there is any constitutional provision which by necessary implication inhibits or precludes the General Assembly from conferring, or the Superior Court from exercising the jurisdiction by appeal authorized and prescribed by said Chapter 655.

It is true that Section 15, Article 6 of the Constitution, which provides that the General Assembly may by law give to any inferior Courts by them to be established, or to one or more Justices of the Peace, jurisdiction of nuisances and the other criminal matters therein enumerated, also further declares that "the General Assembly may by law regulate this jurisdiction, and provide that the proceedings shall be with or without indictment by grand jury, or trial by petit jury, and may grant or deny the privilege of appeal to the Court of General Sessions of the Peace. But we do not consider that this provision, viewed in connection with other provisions of the Constitution, and with reference to the origin and gradual development of the judicial system of this State, absolutely and exclusively restricts and confines to the Court of General Sessions of the Peace the exercise of appellate jurisdiction over the summary jurisdiction and procedure under said Section 15 of Article 6.

It must be observed that all the authority vested in the Legislature under Section 15 of Article 6, is entirely discretionary and nowhere mandatory. Therefore the denying or granting of jurisdiction over the criminal matters therein enumerated, the regulation of such jurisdiction and whether or not the proceedings shall

be with or without indictment by grand jury, or trial by petit jury, and the granting or denying of the privilege of appeal to the Court of General Sessions of the Peace, are all absolutely subject to the judgment and pleasure of the General Assembly.

Because said Constitutional provision, in express language, gives the Legislature the discretionary power to confer original jurisdiction of the criminal matters therein enumerated upon a Justice of the Peace, or upon any inferior Court by them established for such purpose, it does not thereby preclude or prohibit the granting by the General Assembly of such original jurisdiction to the Court of General Sessions of the Peace. Nor does said provision, by its express grant of merely discretionary power to authorize an appeal from such original jurisdiction to the Court of General Sessions of the Peace, thereby exclude or inhibit the granting by the Legislature of such an appeal to the Superior Court as it has given in the present instance.

The provisions of said Section 15, Article 6, of themselves, unaided by other constitutional language or implication of clearer and stronger negative import, are not sufficient to exclude and prohibit the legislative power from conferring summary jurisdiction, either original or appellate—and whether concurrent or exclusive—of the criminal matters therein enumerated, upon either the Court of General Sessions of the Peace, or the Superior Court in this State.

From the earliest period of our colonial history to the present, both the granting and the regulation of criminal jurisdiction have been entrusted exclusively to the legislative judgment and action.

Indeed, under our Colonial charters and until the adoption of our first State Constitution of 1776, even the creation and composition of the Courts, civil and criminal, as well as the apportioning, granting and regulating of their respective jurisdictions and powers, were uniformly left entirely and exclusively to statutory provision.

Whilst our present Constitution of 1831, in its sixth article, expressly creates and prescribes the composition and organization of

the several Courts thereby established, yet its framers deliberately abstained from directly conferring, defining and regulating the jurisdiction and powers (save as to territorial extent) of the Court of General Sessions of the Peace and of the Justices of the Peace, as well as of the Superior Court—except as to the latter's original civil jurisdiction at common law, and its appellate jurisdiction over the Orphans' Court and Register's Court—and designedly entrusted this authority and duty to the legislative power where it had always theretofore been left under all of our previous State Constitutions and colonial charters.

Section 4 of Article 6, of the said Constitution of 1831, at the time of its adoption. expressly conferred upon the present Court of General Sessions of the Peace all the jurisdiction and powers then vested by the laws of this State in the Court of General Quarter Sessions of the Peace theretofore established by the prior Constitution of 1792. And Section 3 of said Article 6, also expressly conferred on the present Superior Court "jurisdiction of all causes of a civil nature, real, personal and mixed, at common law, and all other the jurisdiction and powers vested by the laws of this State in the Supreme Court or Court of Common Pleas," which were also established under said preceding Constitution.

That the jurisdiction and powers vested in said pre-existing Courts by the statutes subsisting at the adoption of the present Constitution of 1831, and thus transferred to the said present Courts, were not to remain unchanged and unchangeable, but might be modified, divested, supplanted or transferred from time to time, as the General Assembly might thereafter deem conducive to the general welfare, is manifest by examination of Section 12 of said Article 6.

It provides that " the General Assembly, notwithstanding anything contained in this article, shall have power to repeal or alter any act of the General Assembly giving jurisdiction to the  *  * Supreme Court, or the Court of Common Pleas, or the Court of General Quarter Sessions of the Peace and Jail Delivery  *  *  * in any matter, or giving any power to either of said Courts."

Careful consideration of this Section, and of Sections 3 and 4 of said article, in connection with the fact that the framers of the present Constitution abstained from conferring and defining by specific constitutional provisions the jurisdiction and powers of the Court of General Sessions of the Peace and of the Superior Court, other than the latter Court's aforesaid excepted civil jurisdiction, clearly discloses that the Constitution has confided to the Legislature the power and duty of conferring by statute the jurisdiction of each of said Courts, other than the Superior Court's original civil jurisdiction at common law, and its appellate jurisdiction over the Orphans' Court and the Register's Court—as heretofore observed.

If this view be correct, then it follows that the General Assembly may, by legislative enactment from to time, confer upon the Superior Court such new and additional jurisdiction and powers as have been granted in the present instance, and regulate the exercise thereof.

As already stated, the Constitution nowhere specifically defines the jurisdiction of Justices of the Peace. It therefore leaves the granting and regulating of both their criminal and civil jurisdiction to the legislative discretion, subject of course to such limitations as may be found in that instrument. In the case before us, the General Assembly has deemed it proper to confer upon Justices of the Peace summary jurisdiction of a criminal nature in the matter of a violation of the statutory provisions for the protection of game in this State, under Section 15 of Article 6 of the Constitution, and to give like jurisdiction thereof by appeal, to the Superior Court. In giving this appellate jurisdiction of such a criminal matter, the Legislature has not divested any Court of this State of any jurisdiction hitherto exclusively vested therein by the Constitution, or actually conferred thereon by statute. It has merely conferred a new and additional jurisdiction upon the Superior Court by giving it appellate powers over a summary proceeding of a criminal nature before an inferior tribunal.

The Superior Court is now, by Statute. as was, from a very

early period, the pre-existing Supreme Court which it superseded, the tribunal especially charged with supervisory jurisdiction and authority over inferior tribunals and officers.

The old Supreme Court formerly had jurisdiction of criminal offences, by removal thereto from the Court of General Quarter Sessions, etc., until this power was abrogated, as to indictments therein for other than capital offences, by the act of June 14, 1793, Volume 2, Delaware Laws, 1090.

In 1829 another statute was enacted, and which is still subsisting and incorporated in Chapter 94, Amended Code, page 702, vesting jurisdiction of all criminal offences not cognizable by the Court of Oyer and Terminer, in the Court of General Quarter Sessions (now General Sessions) of the Peace.

But there does not appear to be any valid Constitutional reason why a criminal jurisdiction, whether appellate or original, which has heretofore been divested by statute, may not now be restored by statute under the power vested by the Constitution in the Legislature to confer upon the Superior Court as explained, either new or renewed jurisdiction.

In the present instance, the General Assembly has exercised this Constitutional power and discretion by conferring upon the Superior Court the appellate jurisdiction in question. Having done so, it is considered and adjudged by this Court that the Superior Court has jurisdiction to hear and determine said appeal, and that this opinion be so certified to that Court.